UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAREMY LARSEN,

    Plaintiff,

v.

STATE OF NEVADA, *et al.*,

    Defendants.

Case No. 2:09-CV-02460-KJD-RJJ

**ORDER**

    Presently before the Court is Plaintiff's Supplemental Brief (#15) filed in response to the Court's order (#13) which converted Defendants' Motion to Dismiss (#5) into a motion for summary judgment. Plaintiff also filed a Motion to Reconsider (#16). Defendants filed a response in opposition (#17) to the motion to reconsider and response (#18) to Plaintiff's supplement. Plaintiff filed a reply (#19) in support of his motion to reconsider.

I.  Facts

    Plaintiff, Jaremy Larsen, is a former student of the University of Nevada, Las Vegas, School of Dental Medicine ("the Dental School"). Plaintiff was a student at the Dental School from September 2005 until February 2008. Based on his 2005 academic performance, the Student Progress Committee recommended that Plaintiff be separated for an indefinite period of time. On January 12, 2006, Plaintiff met with the Academic Council to discuss the recommendation from the

Student Progress Committee. The Academic Council made the same recommendation that Plaintiff be indefinitely separated. Plaintiff then met with the Dean of the Dental School, Patrick Ferrillo, and discussed the recommendations given by the Student Progress Committee and Academic Council. Plaintiff was allowed to speak and offer his explanation and alternatives to the Dean. On January 18, 2006, Dean Ferrillo modified the recommendation and determined that Plaintiff would only be separated for a definite period of time and would be allowed to re-enter the Dental School following successful completion of specified terms. Plaintiff appealed the Dean's determination on January 25, 2006 to the Student Appeals Committee. Plaintiff also sought an extension of the normal time frame due the availability of his counsel and his request was granted.

On February 14, 2006, Plaintiff met with the Student Appeals Committee to discuss Dean Ferrillo's January 18th recommendation and to present new information concerning his medical situation. On February 22, 2006, the Student Appeals Committee recommended to Dean Ferrillo that Plaintiff be allowed to seek reinstatement as a first year student in Fall 2006, if he met several conditions, including taking upper division science and anatomy courses at UNLV during the summer, achieving a B or better in those courses, remediating a dental anatomy course, and reporting his academic progress and management of his medical condition. Finally, Plaintiff was to be placed on academic probation and required to remain in good academic standing for the 2006-2007 Academic Year, achieve a 2.0 or higher GPA in each academic track during that year, and receive no failing grades during the 2006-2007 Academic Year.

On February 24, 2006, Dean Ferrillo essentially adopted the recommendation of the Student Appeals Committee that Plaintiff be allowed to seek reinstatement as a first year student in the Fall of 2006 if he completed the specified conditions. Dean Ferrillo made no substantive changes to the February 22, 2007 recommendation of the Student Appeals Committee. It appears that Plaintiff accepted the conditions and was readmitted for the 2006-2007 Academic Year.

However, in the summer semester 2007, Plaintiff failed two courses. The Student Progress Committee and the Academic Council recommended to the new dean of the dental school, Karen

West, that Plaintiff be indefinitely separated from the school for Plaintiff's failure to meet the requirement that he receive no failing grades during the 2006-2007 Academic Year. Dean West met with Plaintiff to consider his request that he not be separated from the school. On September 20, 2007, the Dean of the Dental School, Karen West, issued a decision that Larsen be "indefinitely separated" from the University for allegedly failing two courses.

Plaintiff appealed the decision of Defendant West pursuant to the terms of the University's School of Dental Medicine Handbook ("the Handbook"), on October 1, 2007. The Dental Medicine Appeals Committee ruled in Larsen's favor and recommended that Larsen not be "indefinitely separated." On October 24, 2007, Dean West issued a letter agreeing that Plaintiff should not be indefinitely separated, because the February 24, 2006 decision by Dean Ferrillo did not specify whether Plaintiff, while on academic probation, would be allowed to remediate any "F" grades. Dean West accepted the recommendation of the Appeals Committee that Plaintiff be allowed to remediate the two "F" grades. Dean West also set a requirement that Plaintiff complete the remediation by November 30, 2007. Plaintiff was also required to establish a remediation schedule and report on a bi-weekly basis his progress in each class.

Plaintiff successfully completed remediation of one class, but failed to remediate his "F" grade in DEN 7111. On December 20, 2007, Dean West notified him of his failure to comply with the October 24th determination. She told him that he was subject to immediate indefinite separation. Plaintiff appealed her December 20, 2007 determination to the Appeals Committee. The Appeals Committee found that Plaintiff had failed to contact his instructor to schedule remediation for DEN 7111 until December 12, 2007, almost two weeks past the November 30, 2007 deadline to have the work completed. The Appeals Committee also found that Plaintiff had failed to establish a remediation schedule and report bi-weekly progress in each class. On January 10, 2008, Dean West informed Plaintiff that because the Appeals Committee concurred with her decision to involuntarily separate him from school, that her October 24, 2007 determination stood.

On January 11, 2008, Plaintiff filed a Petition for Temporary Restraining Order in Nevada State Court.[1]  On January 22, 2008, the State Court granted Plaintiff's Petition, but the Dental School obtained a stay from the Nevada Supreme Court.  On February 5, 2008, the State Court convened an evidentiary hearing.  On February 28, 2008, the State Court entered its order finding that Plaintiff failed to meet the legal requirements for the relief sought, dissolved the temporary restraining order and dismissed Plaintiff's complaint with prejudice.

Plaintiff did not appeal the State Court decision.  Instead, Plaintiff filed the present action on December 31, 2009 asserting claims under 42 U.S.C. § 1983 for violation of his due process rights, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and various state law causes of action.  On March 29, 2011, the Court granted in part Defendants' motion to dismiss.  The Court withheld ruling on the state law causes of action and converted the motion to a motion for summary judgment on the claims against West.  The Court ordered Plaintiff to file a supplemental pleading detailing issues of fact preventing the Court from granting Defendant West qualified immunity.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

---

[1] The initial state court declaratory relief action was filed in tandem with another student, Danielle Maffeo, who was also indefinitely separated from the school.  Maffeo filed her own federal court action, 2:09-cv-2274-HDM-LRL, on November 20, 2009.  Her action was dismissed after West was granted qualified immunity.  The Ninth Circuit Court of Appeals affirmed the district court's decision on December 15, 2011.  See Maffeo v. Nevada, 2011 WL 6254849 (9th Cir. 2011).

4

genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

III.  Analysis

Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The court must determine: (1) taken "in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right'"; and (2)

if yes, was the violated right clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 200-201 (2001). For a right to be clearly established, "its contours must be sufficiently clear that a reasonable official would understand what he is doing violates the right." <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).

Construing the facts in the light most favorable to Plaintiff, Defendant Karen West is shielded by qualified immunity because the facts show that West's conduct did not violate Plaintiff's due process rights.

### A.  Procedural Due Process

A due process claim requires a two-part analysis – was plaintiff deprived of a protected interest, and if so, what process was he due. <u>Logan v. Zimmerman Bush Co.</u>, 455 U.S. 422, 428 (1982). Plaintiff has a protected property interest in continued enrollment at a public institution of higher learning. <u>Univ. of Mo. v. Horowitz</u>, 435 U.S. 78, 84-85 (1978). However, plaintiff is entitled to only minimal procedural due process because he was removed from the dental school for academic reasons. When a student is suspended from a public school or university for disciplinary reasons due process requires "that the student be given oral or written notices of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." <u>Goss v. Lopez</u>, 419 U.S. 565, 581 (1975). Such complete procedural safeguards do not apply when a student is dismissed for failure to meet academic standards. <u>Horowitz</u>, 435 U.S. at 84. Procedural due process is satisfied for the dismissal of a student for academic reasons if the student had (1) prior notice of faculty dissatisfaction with his performance and of the possibility of dismissal, and (2) if the decision to dismiss the student was careful and deliberate. <u>Id.</u> at 85.

Plaintiff was afforded more than the minimal procedural due process required for his academic dismissal. On February 24, 2006, Plaintiff was advised in writing by Dean Ferrillo that instead of indefinitely separating him from the University, he could repeat his first year of dental school and be placed on probation for the entire 2006-2007 Academic Year. He was required to meet certain conditions while on probation, including not failing any additional courses. In the

6

1  summer of 2007, Plaintiff failed two additional courses.  Dean West then recommended that he be
2  indefinitely separated from the University.  Plaintiff appealed this decision, was permitted a hearing
3  with legal counsel present as an advisor and was successful.
4         In a letter from Dean West on October 24, 2007, Plaintiff was notified that he was allowed to
5  remediate his two failed courses and was required to report his progress bi-weekly.  Plaintiff was
6  required to complete the remediation by November 30, 2007.  However, Plaintiff only remediated
7  one class and entirely failed to contact the instructor for the other class until December 12, 2007.
8  Accordingly, Dean West recommended that Plaintiff be indefinitely separated from the University.
9         Plaintiff appealed this decision as well.  A hearing was again held in front of the Dental
10 School's Academic Appeals Committee with counsel present.  The Committee upheld Dean West's
11 decision and Plaintiff was indefinitely separated.
12         The UNLV Dental School Student Handbook provides that the student progress committee
13 notify the Dean if a student is academically struggling.  The Dean has discretion to recommend the
14 student be placed on probation, repeat the year, or be separated from the University.  The Handbook
15 also provides that a student may appeal the Dean's decision to the Academic Appeals Committee.
16 The student is permitted a hearing, after the hearing the committee makes a recommendation to the
17 Dean, who issues the final decision.  If the student is dissatisfied with the final decision he may
18 appeal to the University Provost or President.
19         The University and Dean West followed all of the regulations set forth in the Student
20 Handbook.  They also afforded Plaintiff many opportunities to improve his academic record before
21 finally recommending that he be dismissed permanently from the program.  The process Plaintiff
22 received in this case was substantially greater than that afforded to students who are subject to
23 academic proceedings.  Plaintiff received both written notice and an opportunity to respond.  See

Goss, 419 U.S. at 581.  Consequently, Plaintiff has failed to show that a triable issue of material fact remains on his due process claim against Dean West.[2]

B.  Substantive Due Process

Substantive due process provides heightened protection against government interference with certain fundamental rights and liberties.  Although courts hesitate to extend substantive due process protection to non-liberty interests, courts may review an academic decision of a public education institution under the substantive due process standard.  See Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 503 (1977).  In doing so, the Court must show great "respect for the faculty's professional judgment, [and should not] override it unless it is such a substantial departure from the academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  Regents of the University of Mich. v. Ewing, 474 U.S. 214, 225 (1985).

To establsih a violation of substantive due process, a student must demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision, or must show that the dismissal was motivated by bad faith or ill will unrelated to academic performance.  Horowitz, 435 U.S. at 91-92.  A student may maintain a substantive due process claim if the university's actions constituted a "substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  Ewing, 474 U.S. at 225.

The record does not support Plaintiff's claim that his dismissal was arbitrary or capricious.  Nor does it establish that the University's actions substantially departed from academic norms which demonstrate that West did not exercise professional judgment.  Id.  Plaintiff struggled in school and received at least four (4) failing grades before they were remediated.  He was placed on academic

---

[2]Furthermore, thought the Court gave Plaintiff ample time to collect evidence and brief the issue after converting the motion to dismiss to a motion for summary judgment, Plaintiff cited little evidence of a due process violation. Instead, Plaintiff merely tried to bolster his legal argument by reaching outside the Ninth Circuit to other jurisdictions in order to cite to the most expansive procedural due process he could find.  As the Court noted in its original order (#13), looking at the facts, Plaintiff received all the process he was due, and more.

probation and repeatedly failed to meet the terms or conditions required to maintain his standing. The decision to dismiss him was neither arbitrary nor capricious. Instead, it was the product of at least a year of professors, administrative committees and school officials working with Plaintiff to improve his academic performance. Dean West complied with all the procedural requirements set forth in the student handbook. She gave Plaintiff notice of his poor performance and the recommendations of the Student Progress Committee, the Academic Council, and the Appeals Committee. Each Dean personally discussed Plaintiff's performance with him and gave him an opportunity to explain his situation. Additionally, Dean West followed the recommendation of the Appeals Committee which suggested that he not be indefinitely separated without a chance to remediate the failing grades he received while on academic probation. In the end, Plaintiff chose not to pursue the options he had to remain in the Dental School.

There were legitimate academic reasons to dismiss Plaintiff from the program. Plaintiff received all the process that was due. Dean West's decision to dismiss Plaintiff was careful, deliberate and objectively reasonable. Further, Plaintiff was given an opportunity by this Court to conduct discovery and file a supplemental response to Defendants' motion. Even then, Plaintiff has failed to identify questions of fact that prevent the Court from granting summary judgment. Accordingly, the due process claims against Dean West are dismissed with prejudice.

C.  Motion to Reconsider

Plaintiff argues that the Court should reinstate his Rehabilitation Act or Americans with Disabilities Act ("ADA") claims now that he has retained counsel. However, Plaintiff has failed to show good cause for failing to oppose the motion to dismiss the claims in the first place. In fact, the Court warned Plaintiff on May 20, 2010 that the Court would consider failure to file points and authorities in support of a claim as consent to the Court granting the motion to dismiss. See Doc. No. 9. Furthermore, Plaintiff made an initial strategic choice not to retain counsel, but instead copied Maffeo's complaint almost word for word, except for typographical errors and name and gender changes. Plaintiff did add a seventh cause of action for violations of the Rehabilitation Act and

ADA. Plaintiff's opposition (#11) to the motion to dismiss, when addressing substantive issues, is also similarly identical to Maffeo's opposition to the motion to dismiss in her case. See Maffeo, Doc. No. 9. However, since Maffeo did not raise ADA or Rehabilitation Act claims, Plaintiff had nothing to copy. Thus, he made a tactical decision to not address those claims in his opposition to the motion to dismiss, thereby consenting to their dismissal. The Court finds that Plaintiff's *post hoc* decision to retain Maffeo's counsel and his prior tactical decisions are not an adequate showing of exceptional or extraordinary circumstances justifying reconsideration. See Maraziti v. Thorpe, 52 F.3d 252, 254 (9th Cir. 1995). Accordingly, Plaintiff's motion for reconsideration is denied.

### D. State law claims

A district court has discretion to decline to exercise supplemental jurisdiction over a claim if all claims over which it has original jurisdiction have been dismissed. See 28 U.S.C. § 1367(c). Since the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the remaining claims against Defendant Karen West are **DISMISSED with prejudice**;

IT IS FURTHER ORDERED that Plaintiff's state law claims are **DISMISSED without prejudice**;

IT IS FURTHER ORDERED that Plaintiff's Motion to Reconsider (#16) is **DENIED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

DATED this 7th day of March 2012.

_____
Kent J. Dawson
United States District Judge